UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

PUEBLO OF JEMEZ,
JEMEZ MOUNTAINS ELECTRIC
COOPERATIVE, INC.,
TC COMPANY,
TIMOTHY AND INA ACOMB,
BRIAN T. COX,
QUENTIN AND DORIS FARNHAM,
CHRISTIAN GOSSEIN,
CASEY GREENLING,
ANNA MARJEAN HOLLEMAN,
ROBERT S. HOTCHKISS,
MELVIN AND WANONA MAESTAS,
DONALD J. AND KAREN L. MILLER,
JOHN F. AND CHRISTINE M. PETERSON,
RANDY J. AND LINDA M. PETERSON,
THEARON GIFFORD WILLIS, JR.,

Plaintiffs,

v.                                              Civil Action No. _____

UNITED STATES OF AMERICA,

Defendant.

## COMPLAINT

Plaintiffs, by and through undersigned counsel, bring this action under the Federal Tort Claims Act (FTCA) seeking redress for damages arising from the wrongful acts and omissions of the United States government and its agencies including the United States Forest Service (hereinafter referred to as "USFS" or "Forest Service").

## INTRODUCTION

Plaintiffs' claims arise from the wrongful acts and omissions of the USFS. The harm caused to Plaintiffs was the direct, natural, or probable result of the authorized activity of the

USFS – the ignition of prescribed burns[1] an inherently dangerous activity which in this case, escaped from their containment and became the Cerro Pelado Fire (the "Fire").

Between January 19, 2022, and February 19, 2022, the USFS started the Pino West prescribed burn in the Santa Fe National Forest near Jemez Springs, New Mexico by igniting numerous burn piles[2] that were covered in snow. These smoldering burn piles were then left completely unattended and unmonitored during the ensuing weeks while quickly changing weather conditions including high temperatures, abnormally dry conditions, and numerous red flag (extreme wind warnings) days caused the snow cover to rapidly dissipate and disappear.[3] These weather conditions increased the likelihood that the Pino West prescribed burn would escape and burn Plaintiffs' properties. Based on standard fire behavior principles, once the prescribed burn escaped, it was inevitable that it would turn into a severe wildfire.

All prescribed burns are required to be authorized, controlled, and managed pursuant to an approved Prescribed Burn Plan ("Burn Plan"). The Pino West Burn Plan mandated that "continuous snow coverage of the forest floor over the entire burn unit" be present during the entirety of the prescribed burn. The Pino West Burn Plan is attached hereto as **Exhibit 1** (hereinafter referred to as the "Burn Plan"). Significantly, the "lynch pin" requirement of snow cover was so critical to the Pino West Burn Plan that it is mentioned in it no less than 35 times. Here, instead of ensuring that the required snow cover was continually present to comply with

---

[1] A "prescribed burn" is defined by the Prescribed Burn Approval Act of 2016, 16 U.S.C. § 551C-1, as "a planned fire intentionally ignited." *See* Pub.L. 114–275, § 2, Dec. 14, 2016, 130 Stat. 1405.

[2] A "pile burn" is where forest debris is collected into piles and then ignited under specified conditions.

[3] According to the Southwest Area Coordination Center's (SWCC) part of the National Interagency Fire Center's (NIFC) system for managing wildland fires, the "[e]ntire area was in drought moving into April, with severe to exceptional drought conditions prevalent…especially across New Mexico and the Four Corners Area. An unprecedented streak of windy & dry conditions occurred during April and May, focused mainly on New Mexico and far eastern Arizona. These combined with the drought to drive fire danger indices to record levels for a sustained period. The NWS Albuquerque forecast office reported 2022 as being among the top three years in terms of number of Red Flag Warnings issued. These were issued almost daily during April and May." Southwest Area Annual Report: 2022 Fire Year

the requirements of the Burn Plan, the USFS failed to monitor the burn piles, and by mid- to late-March 2022, the required continuous snow cover disappeared as depicted by the satellite image below. *See Archival Satellite Images from NASA's Fire Information for Resource Management Systems* ("FIRMS"), dated January 19–April 23, 2022, attached hereto as **Exhibit 2**.[4]



***NASA Satellite Image Showing that by March 24, 2022, Snow Coverage was Receding***
(**Ex. 2,** Archival Satellite Images, at 31).



***NASA Satellite Image Showing No Snow Coverage Except for in High Elevation by March 27, 2022***
(**Ex. 2,** Archival Satellite Images, at 35).

---

[4] The satellite images included in **Exhibit 2** show that there was never continuous or persistent snow coverage from January 19, 2022, to April 23, 2022. By late-March 2022, there was <u>no</u> snow coverage.

On April 18, 2022, a prescribed burn pile in an area not far from the Pino West burn piles designated as the "San Juan Mesa Prescribed Burn," escaped its containment and the USFS immediately dispatched a crew to regain control of the fire. On April 20, 2022, after containing the San Juan Mesa fire and recognizing the danger of other nearby pile burns also escaping their containment, the fire crew checked on the Pino West pile burns. What they found was ominous smoke rising from the still burning and smoldering pile burns. The crew attempted to extinguish the burning and smoldering embers by scattering them using hand tools. However, this allowed the high winds to fan the embers into flames, and on April 22, 2022, the Cerro Pelado Fire began its uncontrolled devastation until it was finally extinguished on June 15, 2022, after burning almost 46,000 acres in the Jemez mountains.[5]



***NASA Satellite Image Showing No Snow Coverage on April 21, 2022***
(**Ex. 2,** Archival Satellite Images, at 40).

_____

[5] The Cerro Pelado Fire was the third reported prescribed burn to explode into a New Mexico wildfire in April 2022. The first two fires were the Hermit's Peak Fire and the Calf Canyon Fire. By October 2022 Congress passed the Hermit's Peak/Calf Canyon Fire Assistance Act to compensate victims of those two fires. The USFS did not admit responsibility for the Cerro Pelado Fire until later (the May 2023 Report of Investigation (ROI) that was publicized in July 2023), so the victims of this third fire (Cerro Pelado) were unfairly left out of the Hermit's Peak/Calf Canyon Fire Assistance Act that had already been passed



***NASA Satellite Image Showing No Snow Coverage and Fire Outbreak Area on April 23, 2022***
(**Ex. 2,** Archival Satellite Images, at 41).



***NASA Satellite Image Showing No Snow Coverage and Fire Outbreak Area on April 23, 2022***
(**Ex. 2,** Archival Satellite Images, at 42).

Because prescribed burns are inherently dangerous and increase the risk of harm, under

New Mexico tort law, the duty of care owed to Plaintiffs increases commensurate with the rising

risk of harm. The USFS breached its heightened duty of care by violating mandatory regulations

5

and Burn Plan requirements, and by failing to notify and warn others of the resulting increase in wildfire danger. As such, Plaintiffs' injuries were foreseeable given the USFS' knowledge that the success of the prescribed burn was entirely dependent upon continuously present snow coverage.

Fifteen months after the Pino West pile burns became a wildfire, the USFS finally admitted to causing the Cerro Pelado Fire. However, it has not admitted it acted negligently or accepted any legal responsibility for the resulting damages to Plaintiffs. As described herein, Plaintiffs' claims are the direct, probable, and natural result of the USFS' negligent acts that demonstrated a clear disobedience to non-discretionary and mandatory USFS regulations and the Burn Plan. There is no discretion, judgement or choice whether to follow the directives of a Burn Plan. Significant deviations from the Burn Plan by the USFS are not judgment calls, or public policy decisions entitled to any legal deference.

The Cerro Pelado Fire continues to significantly impact Plaintiffs. Watersheds and waterways affected by the 46,000 area burn scar were severely contaminated, and Plaintiffs continue to experience loss of structures and forest, and persistent and worsening flooding and erosion, causing further damage to property and improvements. These losses have a profound and ongoing impact on Plaintiffs' capacity to maintain safe, functional communities and homes, requiring substantial resources for repair and recovery.

## **PARTIES, JURISDICTION, AND VENUE**

1.      This action arises under the Federal Tort Claims Act, Sections 2671 through 2680 of Title 28 of the United States Code. This Court is vested with jurisdiction pursuant to Section 1346(b) of Title 28 of the United States Code.

2.      Plaintiff Pueblo of Jemez is a Sovereign Nation recognized by the United States

and located within this district.

3.      Plaintiff Jemez Mountain Electrical Cooperative is a New Mexico non-profit, member owned and controlled utility cooperative with its principal place of business located in Espanola, Rio Arriba County, New Mexico, which is in this district.

4.      Plaintiff TC Company is a New Mexico corporation with its principal place of business located in Espanola, Rio Arriba County, New Mexico, which is in this district.

5.      Plaintiffs Timothy and Ina Acomb, Brian T. Cox, Quentin and Doris Farnham, Christian Gossein, Casey Greenling, Anna Marjean Holleman, Robert S. Hotchkiss, Melvin and Wanona Maestas, Donald J. and Karen L. Miller, John F. and Christine M.  Peterson, Randy J. and Linda M. Peterson, and Thearon Gifford Willis, Jr., are all individuals owning property located in the Southern Jemez Mountains, Sandoval County, New Mexico which is within this district.

6.      Defendant the United States of America includes the U.S. Department of Agriculture, the USFS, and any federal, state, or local agency or instrumentality working under the auspices of the federal government, all of which may be served through the U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530-0001.

7.      Upon information and belief, at all times mentioned, unnamed individuals[6] were employees of the USFS, a federal agency within the United States Department of Agriculture (USDA). In connection with the acts and omissions alleged, the unnamed employees were acting within the scope of their employment, and with the permission and consent of Defendant.

8.      The events giving rise to these causes of action all occurred in New Mexico. Venue is proper in the United States District Court for the District of New Mexico pursuant to 28

---

[6] Pursuant to FOIA exemptions, all names were redacted from USFS documents produced to the Plaintiffs

U.S.C. § 1402(b).

9.      Plaintiffs exhausted their administrative remedies, pursuant to FTCA 28 U.S.C. §
2675(a), as Plaintiffs timely submitted their claims to the relevant federal agency (the USFS),
and the agency failed to act on Plaintiffs' claims within six months of presentment. Plaintiffs'
claims are therefore ripe and justiciable.

10.     The discretionary function exception to the FTCA does not apply because as
described herein, the conduct at issue violated The Prescribed Burn Approval Act of 2016 and its
mandatory, non-discretionary regulations under 16 U.S.C. § 551and its subsequent Pino West
Prescribed Burn Plan containing mandatory, non-discretionary functions.

11.     Plaintiffs seek all damages recoverable under New Mexico tort law as set forth
under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.

## RELEVANT FACTS

12.     Between January 19, 2022, and February 19, 2022, Defendant's employees
ignited pile burns known as the Pino West Prescribed Burn in the Santa Fe National Forest in the
southern Jemez Mountains within Sandoval County, New Mexico, southwest of Los Alamos.

13.     The Pino West Prescribed Burn was recommended and authorized to be
implemented pursuant to a Burn Plan that was originally approved on November 21, 2019, and
then re-validated on December 1, 2020, January 19, 2022, and February 15, 2022.

14.     In each instance, the Burn Plan was expressly authorized on the "expectation that
the [prescribed burn] will be implemented . . . as discussed and documented and attached to this
plan." (**Ex. 1**, Burn Plan, "Element 2A: Agency Administrator Ignition Authorization," at 112–
13).

15.     The Burn Plan is comprised of 21 "Elements" and Appendices A through F. The

relevant "Elements" to this Complaint are:

    a.   Element 7: Prescription. The "Prescription Parameters" requires "**Continuous snow coverage of the forest floor over the entire burn unit.** If continuous snow coverage is not present this burn plan is not applicable . . . . The Burn Boss will monitor weather conditions for days following the day of ignitions to assure snow cover will persist until the burn is declared out." (**Ex. 1**, Burn Plan, "Element 7B: Prescription Parameters," at 126).The "Fire Modeling" provided "**There is a requirement for continuous snow coverage under this burn plan** . . . ." (Emphasis in original.). (*Id.* at 127).

    b.   Element 16: Holding Plan.[7] This describes the "General Procedures for Holding," and provides that "[b]ecause of required snow, holding will not be an issue." It also requires that the Burn Boss specify the requirements and determine patrol status and frequency." (**Ex. 1**, Burn Plan, "Element 16A: General Procedures for Holding," at 132).

    c.   Element 17: Contingency Plan.[8] Here no contingency plan was developed for "Going Out of Prescription at High End (low fuel moisture, high temperatures, winds etc.)" because "[s]now presence is required under this burn plan . . . ." (**Ex. 1**, Burn Plan, "Element 17B: Actions Needed," at 133). In addition, the Contingency Plan requires "**1 Type 6 Engines or 3 red carded personnel is required for a contingency resource due to the requirement of snow to be**

---

[7] A holding plan outlines the resources and actions needed to keep the fire contained within the designated burn area. It includes the necessary personnel, equipment, and strategies for controlling the fire's spread and preventing it from escaping the planned boundaries.

[8] A contingency plan is a backup plan that outlines actions to be taken if the fire deviates from the intended path or if unforeseen events occur. It's designed to handle low-probability but high-consequence scenarios, such as fire escaping containment and changes in weather.

present in order to implement this burn plan," and allowed a "maximum response time allowed for any contingency resource will be 12 hours." (Emphasis in the original). (**Ex. 1**, Burn Plan, "Element 17B: Actions Needed," at 134). And Element C. Minimum Contingency Resources and Maximum Response Time(s):

> "**If prescription parameters are exceeded** or anticipated to be exceeded, the following contingency resources will be used to help keep the fire in-check **until it is back in prescription. This must be accomplished within the next burning period (FSM 5140.31) in order to avoid conversion to "wildfire." (Bolding added).**

(*Id.*, at 134).

d.  Element 18: Wildfire Declaration.[9] This requires a determination that contingency actions to regain control over a prescribed burn have been implemented and have failed or are likely to fail and cannot be mitigated, and should be made by the Burn Boss when "[t]he fire behavior <u>exceeds the limits described in the prescribed fire plan</u>." (**Ex. 1**, Burn Plan, "Element 18A: Wildfire Declared By," at 134). It requires immediate notification to Dispatch. (Emphasis added). (**Ex. 1**, Burn Plan, "Element 18C: Notifications," at 135).

e.  Element 20: Monitoring. This reaffirms the required presence of snow and requires weather monitoring/documentation as well as "visual monitoring will be used to assess both the fire behavior of the piles and to ensure desired consumption of the piles." (**Ex. 1**, Burn Plan, "Element 20C: Fire Behavior Monitoring Required and Procedures," at 137).

---

[9] A wildfire declaration is the point where a prescribed (controlled) burn, intended to achieve specific resource management objectives, veers out of control and becomes an uncontained fire.

    f.   Element 21: Post-burn Activities. The post-burn activities that **"must be completed"** include "[a]dequate patrol, by fire red-carded personnel,[10] to ensure that the burn does not escape the perimeter after ignition is completed" and "[r]e-visit the pile burned units to establish if desired consumptions were met and project objectives achieved." (Emphasis in the original). (**Ex. 1**, Burn Plan, "Element 20A: Post-burn Activities that must be Completed," at 137).

16.    Defendant left the Pino West pile burns unattended and unmonitored from February 19, 2022, until April 20, 2022, and thereafter failed to implement the mandatory contingency requirements to ensure the hold over burn was back in prescription.

17.    By mid-March 2022, the snow cover required by the Pino West Burn Plan was gone. Satellite photos of the prescribed burn's location evidence that there was no visible or continuous snow cover on the forest floor over the entire unit between March 25 and April 20, 2022. (**Ex. 2**, Satellite Photos, dated March 25–April 20, 2022).

18.    Between April 22, 2022, and June 15, 2022, the Cerro Pelado Fire burned 45,605 acres, including the land, improvements, and personal property of the Plaintiffs.

19.    Sometime in or around March 2023, Defendant ordered an internal investigation by the Forest Service Law Enforcement and Investigations to determine the cause and origin of the Cerro Pelado Fire.

20.    On July 24, 2023, USDA Forest Service Southwestern Regional Forester, Michiko Martin, announced the completion of the investigation into the origin and cause of the Cerro Pelado Fire, stating:

---

[10] Red-carded personnel refers to individuals who have completed the necessary training and qualifications to participate in wildland fire operations, including prescribed burns.

> Our investigation has confirmed that the Cerro Pelado Fire on the Jemez Ranger District of the Santa Fe National Forest was caused by a holdover fire from the Pino West Piles Prescribed Fire, a debris pile burn. A holdover fire is a fire that smolders undetectably. In this case, despite being covered by wet snow, this holdover fire remained dormant for considerable time with no visible sign of smoke or heat. This investigation adds to the considerable evidence of how severely the Santa Fe National Forest was affected by extreme environmental conditions caused by historic drought in 2022.

See, *USDA Forest Service confirms cause of the 2022 Cerro Pelado Fire on the Santa Fe National Forest*, U.S. Forest Service (Jul. 24, 2023) https://www.fs.usda.gov/detail/santafe/news-events/?cid=FSEPRD1124829 (Accessed: Apr. 18, 2023).

21.    The USFS released a redacted copy of the Wildland Report of Investigation (the "First ROI"), completed by the Washington State Department of Natural Resources on or around May 9, 2022. The First ROI reveals that the USFS employees made several misrepresentations,[11] causing investigators to conclude that the origin of the Cerro Pelado Fire could not be determined. A true and correct copy of the First ROI is attached hereto as **Exhibit 3**.

22.    Upon information and belief, due to internal "whistleblower" type complaint(s) within the USFS's District Office regarding the "inconclusive" cause of origin in the First ROI, a second investigation was ordered, creating the need for a second report of investigation ("Second ROI").

23.    On or around May 24, 2023, the Washington State Department of Natural Resources completed a second Wildland Report of Investigation (the "Second ROI"). The Second ROI concluded that the Cerro Pelado Fire was caused by the Pino West Prescribed Fire's escape. A true and correct copy of the Second ROI is attached hereto as **Exhibit 4**.

24.    The Second ROI determined that the Pino West Prescribed Fire's escape was

---

[11] *See e.g.*, **Ex. 3**, First ROI, 336–37, 339 (showing how USFS employees intentionally misrepresented to the cause and origin investigator that the Pino West pile burns were out on April 20, 2022).

caused by the negligence of USFS employees who acted contrary to the Burn Plan. Specifically:

      a.     The Burn Plan required snow to be present during the entirety of the Pino West Prescribed Burn. Due to rapidly changing weather conditions, the snow cover had disappeared by the end of March 2022. (**Ex. 4**, Second ROI at 89).

      b.     The Burn Plan required that the Burn Boss monitor the weather conditions following ignitions to assure snow cover persisted until the burn is declared out. (See Burn Plan at 126).[12] There is no evidence that the weather conditions were monitored or that the changing conditions were addressed at any time between the final ignition of the Pino West pile burns on February 19, 2022, and April 20, 2022. There is also no indication that the Pino West pile burns were ever "declared out."  (**Ex. 4**, Second ROI at 94).

      c.     The Burn Plan required visual monitoring to assess the fire behavior of the pile burns as well as to ensure the desired consumption of the pile burns. (**Ex. 1**, Burn Plan at 137).[13] There is evidence that USFS employees <u>did not</u> perform any visual monitoring at any time between the ignition of the Pino West pile burns and April 20, 2022. (**Ex. 4**, Second ROI at 94, 176 (showing the WILD-CAD Dispatch log reporting that there was no fire crew activity after February 19, 2022); *see also* <u>TC Co. v. United States Forest Serv.</u>, No. 1:23-CV-0514 DLM/00514 DCM-JMR, 2024 WL 5263697 (USFS "confirmed that no daily logs or Form 214s

---

[12] In addition, the USFS Manual ("FSM") requires that: (i) the weather be constantly monitored during a prescribed burn (5142.3(4)); and (ii) **[c]hange in weather conditions which may compromise the successful implementation of a prescribed burn must be documented** and addressed (5142.44). The FSM also requires: "**Weather conditions must be monitored during all phases (including mop up) of prescribed fire implementation.**" USFS Manual 5100, Fire Management, Ch. 5140, Hazardous Fuels Management and Prescribed Fire (Effective: Apr. 2, 2020). (Emphasis added).

[13] In addition, the USFS Manual 5100 (FSM 5100, Chapter 5140), and also Section 5142, which declares PMS 484 as USFS Policy/Direction, requires daily documentation. Specifically, USFS Manual 5100, Chapter 5140, Section 5142.3 states, "The NWCG Interagency Prescribed Fire Planning and Implementation Procedures Guide (PMS 484) is USFS policy." The NWCG Standards for Prescribed Fire Planning and Implementation state: **All prescribed fire project files must contain the following information** . . . . **Monitoring data including weather, fire behavior, fire effects, and smoke dispersal observations. (Emphasis added).**

were created for the Pino West prescribed burns.")).

**WILD-CAD Dispatch Log Showing No Activity after February 19, 2022**
(**Ex. 4**, Second ROI, at 176)

        d.        The Pino West Prescribed Fire Plan at "Element 21: Post-burn Activities"

states: "Post-Burn Activities that must be Completed: . . . Adequate patrol, by fire red-carded

personnel, to ensure that the burn does not escape the perimeter after ignition is completed. Re-

visit the pile burned units to establish if desired consumptions were met and project objectives

achieved." Here there is evidence that the Pino West Prescription Fires were never visually

monitored by the Fire Service until April 20, 2022 (**Ex. 4**, Second ROI at 92), and the Fire

Service admits it has no records of any monitoring activity. (*See also* TC Co., 2024 WL

5263697, at *6 (USFS "confirmed that no daily logs or Form 214s were created for the Pino

West prescribed burns.")).

        e.        On April 20, 2022, two days before the Cerro Pelado Fire began, USFS

personnel observed smoke emanating from the Pino West pile burns. They used hand tools to

scatter the burning and smoldering materials in an attempt to extinguish the fire. (**Ex. 4**, Second

ROI at 92–93). However, the Burn Plan provided that if the Pino West fires went out of prescription the USFS was required to use, at a minimum, one "type 6 engine,"[14] with a maximum response time of 12 hours until the fire "is back in prescription." (**Ex. 1**, Burn Plan at 134).

       f.     The USFS should have been aware in March and April 2022, before the prescribed burn escaped, that the mandatory snow cover was non-existent. As early as April 18, 2022, the USFS had actual knowledge that burn piles were still ignited and smoldering and, therefore, required monitoring, notifying, and warning to the affected property owners, including Plaintiffs, that the Pino West prescribed burn was out of prescription and was required to be placed "back in prescription." The USFS' failure to provide notice of the changed conditions to Plaintiffs signaled the last clear chance of the impending wildfire conditions.

       g.     By April 20, 2022, the USFS knew that the Pino West pile burns had exceeded the limits described in the Burn Plan and were unacceptable, and knew or should have known that its contingency actions would fail or were likely to fail, but refused to declare a wildfire and make the immediate required notifications.

    25.    On May 24, 2022, The Governor of the State of New Mexico, Michelle Lujan Grisham, issued a Declaration of Emergency Executive Order declaring a state of emergency exists due to the out of control Cerro Pelado Fire causing damage to State, County and private property.  The USFS's cover-up of the actual cause and origin of the wildfire resulted in the victims of the fire being left out of the Hermit's Peak Calf Canyon Fire Assistance Act. Governor Lujan's Declaration of Emergency, dated May 24, 2022, is attached hereto as

---

[14] A USFS Type 6 engine is a smaller, wildland fire engine with a water tank designed for initial attack and maneuverability in rough terrain, often referred to as a "mini pumper" or "brush truck."

**Exhibit 5**. The US Forest Service has yet to take responsibility for its misconduct.

26.     The direct and proximate cause of the damages suffered by the Plaintiffs was due to the negligence of Defendant's employees, in that they acted contrary to the ___**mandatory**___ requirements of the Burn Plan and USFS Fire Service Manual as set forth above.

27.     The discretionary function exception ("DF exception") to the FTCA does not apply because the conduct described above violated the mandatory requirements of the Burn Plan, as specifically set forth above.

28.     Plaintiffs' properties were among those destroyed or damaged by the Cerro Pelado Fire.  Some Plaintiffs suffered extensive damage to critical infrastructure and public services as a direct and proximate result of the Cerro Pelado Fire. This damage includes the destruction of buildings, roads, power lines, and other essential infrastructure, as well as significant disruption to public services such as electricity. The fire has also led to increased operating expenses such as increased cost of insurance, and caused long-term interference with Plaintiffs' ability to provide essential public and community services.

29.     On April 23, 2024, and again on May 9, 2024, Plaintiffs submitted their SF-95s to Defendant. Plaintiffs exhausted their administrative remedies pursuant to FTCA 28 U.S.C. §2675(a), as Plaintiffs timely submitted their claims to the relevant federal agency (the USFS), and the agency failed to act on Plaintiffs' administrative claims within six months of presentment.[15] Plaintiffs' claims are therefore ripe and justiciable.

---

[15] To date, the USDA has not provided a denial or settlement offer for Plaintiffs' claims. One item the USDA requested from Plaintiffs on 5/14/24 and again on 1/15/2025 in response to the SF-95's was "evidence or information that may have a bearing on the responsibility of the [USFS] for the damages claimed", even though the USFS' own ROI assigns responsibility for the fire to the USFS, and even though Plaintiffs have submitted 5 FOIA requests to the USDA/USFS from 1/27/2023 to 3/7/2024 but Plaintiffs have still not received all the information requested about the Pino West Prescribed Burn or about the Cerro Pelado Fire. The USDA's failure to provide a settlement offer or denial after six months of submission of the claims may be treated as a denial for the purposes of filing a lawsuit under the FTCA, 28 U.S.C. § 2675(a).

**<u>COUNT ONE</u>**
**NEGLIGENCE PURSUANT TO THE FTCA, 28 U.S.C. §§ 1346(B), 2671-2680**

30.  Paragraphs 1-29 are realleged and incorporated as if fully restated herein.

31.  Defendant is liable in tort for injuries and damages pursuant to 28 U.S.C. §§ 1346(b) and 2671–80.

32.  Defendant is liable for the negligent acts and omissions of its agents and employees, including the USFS, a division of the USDA.

33.  Defendant, through the USFS, owed a duty to the public, including Plaintiffs, to use reasonable care and to follow mandated directives in the planning, monitoring and control of prescribed burns, and to use reasonable care in the response to prescribed burns which become wildfires, including those which were caused as result of Defendant's negligence.[16]

34.  Defendant owed a duty to the public following the Cerro Pelado Fire, and to provide adequate warnings of the dangers of life-threatening flash flooding as a result of the burn scar of the Fire.

35.  The damages to Plaintiffs occurred as a direct and proximate result of the Cerro Pelado Fire, which caused a burn scar and damaging flash floods.

36.  Defendant, through the USFS and its agents and employees, was negligent in the following ways:

    a.  Failing to follow mandated directives in the implementation of the Pino West Burn Plan, where the USFS had actual knowledge that the prescribed burn was "out-of-prescription" due to the mandatory requirement for continuous snow coverage over the entire forest floor and failed to take mandatory

---

[16] The New Mexico Supreme Court has ruled that as the risk of danger increases, the duty of care also increases. Clay v. Ferrellgas, 1994-NMSC-080, ¶ 13, 118 N.M. 266, 881 P.2d 11.

corrective action to bring it "back in prescription" and to avoid causing the Cerro Peldo wildfire.

b.  Failing to monitor weather conditions following the days of ignition to assure persistent snow cover until the burn is declared out, and then failing to follow mandatory directives in the Burn Plan once the Forest Service had actual knowledge that continuous snow coverage conditions had ceased in mid-March 2022.

c.  Failing to maintain minimum organizational staffing and resources to meet the out-of-prescription contingencies when the Forest Service knew or should have known that the Pino West pile burns were continuously out of prescription due to lack of snow cover and failed to bring the Pile Burn "back in prescription".

d.  Failing to comply with the mandatory maximum response time of 12 hours for out-of-prescription contingences, to include but not limited to, the type 6 engine and 3 red carded personnel. The Pino West contingency plan required resources due to the requirement of snow to be persistent with "continuous snow coverage of the forest floor over the entire burn unit" and failed to bring the burn "back in prescription."

e.  Failing to declare a wildfire when the mandatory fire behavior exceeded the limits described in the prescribed fire plan, to include but not limited to lack of mandatory "continuous snow coverage of the forest floor over the entire burn unit" in order to implement the burn plan, actual knowledge that the fire is still burning in the burn pit on April 20, 2022, and failing to initiate and

comply with the required Minimum Contingency Resources and Maximum Response Time(s) when prescription parameters exceeded prescription requirements used to keep the fire in-check until it is "back in prescription." This mandatory contingency was required to be accomplished within the next burning period in order to avoid conversion to "wildfire." The USFS failed to timely bring the burn "back into prescription."

f.  Failing to comply with required weather and fire monitoring procedures to ensure that fire plan objectives are met, to include bring the pile burns back into prescription to avoid the Cerro Pelado Fire.

g.  Failing to comply with Post-burn Activities that "must be completed" after the ignition of the burn, and specifically to provide "(a)dequate patrol, by fire red-carded personnel, to ensure that the burn does not escape the perimeter after ignition is completed,"P and "(r)e-visit the pile burn units to establish if desired consumptions were met and project objectives achieved" to include but not limited to, returning the burn back into prescription, rather than causing a destructive wildfire.

h.  Failing to follow mandated directives in the management of prescribed burns by leaving the Pino West pile burns unattended and unmonitored from February 19 to April 20, 2022, and thereafter failing to bring the pile burns back into prescription or declare a wildfire and suppress the still smoldering piles.

i.  As of April 18, 2022, the USFS became aware that burn piles were still on fire and, therefore, required monitoring, notifying, and warning affected property

owners, including Plaintiffs, that the prescribed burns were out of prescription. The USFS' failure to provide notice to the Plaintiffs that the pile burns were out of prescription signaled the last clear chance of avoiding the impending wildfire conditions.

j.   By April 20, 2022, the USFS knew that the Pino West pile burns had exceeded the burn parameter limits described in the Burn Plan and were unacceptable, and knew or should have known that its contingency actions would fail or were likely to fail, but refused to declare a wildfire and make the immediate required notifications and initiate suppression.

k.   Failing to warn Plaintiffs that the Pino West pile burns were out of prescription on or about April 20, 2022, and failing to initiate remedial action necessary to bring the burn back into prescription and avoid the Cerro Pelado Fire.

l.   Failing to comply with the Burn Plan directives as set forth in Paragraph 24 above as detailed in the Second ROI findings.

m.  Other negligence to be discovered.

37.    As a direct and proximate cause of the negligence of the United States of America, through the acts and omissions of the USFS agents and employees, Plaintiffs suffered damages from the Cerro Pelado Fire.

## COUNT TWO
### PRIVATE NUISANCE

38.    The Cerro Pelado Fire constituted a private nuisance (e.g., annoyance, discomfort, and inconvenience) that disturbed the Plaintiffs' right to their property as a result of the USFS's reckless and abnormally dangerous activity.

39.     The Cerro Pelado Fire invaded Plaintiffs' land by damaging and/or destroying their property and personal possessions. Although this invasion may have been unintentional, it resulted from the USFS's negligence (i.e., the Cerro Pelado Fire would not have ignited but for the USFS losing control of the prescribed burn).

40.     As previously stated, under New Mexico Law, a claim for negligence requires showing that (i) Defendant owed a duty to Plaintiffs based upon a standard of reasonable care; (ii) a breach of that duty; and (iii) that this breach was the proximate cause and cause in fact of Plaintiffs' damages.

41.     The Forest Service owed Plaintiffs a duty to not damage their property and breached that duty by failing to properly manage and contain a prescribed burn in accordance with mandatory policies and protocols outlined in the U.S. Forest Service Manual and U.S. Forest Service Handbook.

42.     This mismanagement of forest fire activity created an unreasonable risk of harm.

43.     Further, the resulting damage to federal and non-federal land, destruction of property, and displacement of people significantly outweighs any benefit of the prescribed burn and the dormant burn pile.

44.     The USFS's failure to properly maintain and monitor the prescribed burn was also *reckless* because prescribed pile burns are inherently dangerous and increase the risk of forest fires if not conducted properly. The Forest Service knows that mismanagement of its forest fires can lead to unreasonable risk of harm, and it has prescribed burn policies to prevent harm.[17] Yet

---

[17] In a statement regarding the 2000 Cerro Grande (Los Alamos) Fire, which was also caused by a mismanaged prescribed burn, the Associate Director of the Energy, Resources, and Science Issues, Resources, Community, and Economic Development Division, Barry T. Hill, emphasized:

As I have already mentioned, introducing fire into forests under any conditions, including a prescribed burn

the Forest Service still failed to properly adhere to those policies which caused the prescribed burn to escape.

45.    Finally, the Forest Service's conduct further demonstrates recklessness because prescribed burning is an "abnormally dangerous" activity under New Mexico law.

46.    Setting fire to a forest, even when following the utmost care under prescribed fire policy and safety protocol, significantly increases the risk of harm and the likelihood of creating dangerous conditions, especially in a dry, southwestern area that is experiencing a long-term drought.

47.    Therefore, the Forest Service's instigation of the Cerro Pelado Fire is a nuisance under New Mexico State law because it is a negligent and reckless invasion, and is abnormally dangerous activity.

**COUNT THREE**
**PUBLIC NUISANCE**

48.    New Mexico law defines statutory public nuisance as "anything affecting any number of citizens" that is "injurious to public health, safety, morals or welfare" or "interferes with the exercise and enjoyment of public rights, including the right to use public property."..".[18]

---

is inherently risky. **This risk is compounded in a situation like that at Bandelier, with a large fuel buildup in the park, as well as on the adjacent Santa Fe National Forest, the Los Alamos National Laboratory, and thousands of people living in Los Alamos and other communities just a few miles from the burn site. Under such circumstances, it is critical that a prescribed burn be closely coordinated with officials from jurisdictions that could potentially be affected by it.**

Statement of Barry T. Hill, "Fire Management: Lessons Learned From the Cerro Grande (Los Alamos)," before the S. Comm. on Energy and Natural Resources, 106th Cong. (Jul. 20, 2000) https://www.gao.gov/assets/t-rced-00-257.pdf (Accessed: Apr. 18. 2025). (Bolding added). This shows that the USFS knew the inherent danger and risks created by prescribed burns in New Mexico.

[18] See, *Padilla v. Lawrence*, 1984- NMCA-064, ¶ 24, 101 N.M. 556, 685 P.2d 964 New Mexico recognizes both common law and statutory public nuisance. See *City of Sunland Park v. Harris News, Inc.,* 2005-NMCA-128, ¶ 40, 138 N.M. 588, 124 P.3d 566; see also NMSA 1978, § 30-8-1 (1963) (setting forth offense of public nuisance). "[A] nuisance may be both public and private, or mixed, where a considerable number of people suffer in the interference with their use and enjoyment of land." *City of Sunland Park*, 2005-NMCA-128, ¶ 41 (internal quotation marks and citation omitted).

49.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered a condition which constitutes a public nuisance under New Mexico law.

50.     At all times relevant, Plaintiffs held an interest in or occupied property at or near the site of the Cerro Pelado Fire. As such, Plaintiffs had a right to occupy, enjoy, and/or use their property without interference by the Forest Service or the consequences of the Forest Service's conduct.

51.     At all times relevant, the Forest Service owed Plaintiffs and the public a duty to operate, inspect, maintain, and manage Santa Fe National Forest in a manner that would not cause harm or injury to the public.

52.     The Cerro Pelado Fire caused widespread damage across Sandoval County, New Mexico. The Fire either damaged or destroyed thousands of acres; residential and commercial structures; and culturally significant and sacred spaces and artifacts.

53.     The Fire also created harmful conditions that adversely impacted the health of the public due to the smoke, ash, soot, and other forms of environmental pollution. These hazardous conditions interfered with Plaintiffs' comfortable occupancy, use, and/or enjoyment of their property throughout Sandoval County both during and after the Fire.

54.     The public could neither consent nor avoid the Defendants' negligent conduct or the consequences thereof.

55.     The damage caused by the Forest Service's mismanagement of the Pino West prescribed burn and resulting wildfire are ongoing and affect surrounding communities. Because of the fire's location, temperature, and duration, extensive areas of substantial environmental pollution both within and adjacent to the fire's perimeter. This pollution caused significant post fire runoff hazards such as hillside erosion, debris flow hazards, and sediment laden flow

hazards. Hazardous chemicals, debris, toxins, and debris in the air, water, and soils of the affected areas and surrounding regions still impact the communities impacted by the Cerro Pelado Fire today.

56.   As a direct and proximate result of the Forest Service's conduct, Plaintiffs suffered harm different from the type of harm suffered by the general public. Plaintiffs lost the ability to occupy, possess, use, and/or enjoy their land, real, and/or personal property. Plaintiffs also have reasonable and rational fear that the burnt land is dangerous; that the fair market value of their property may decrease; that they may lose the ability to obtain fire or homeowners' insurance; and that they may have been exposed to toxic substances emanating from burnt structures.

57.   As a direct and proximate cause of Defendants' conduct, Plaintiffs suffered and continue to suffer discomfort, anxiety, fear, and stress due to the Fire's interference with their occupancy, possession, use, and/or enjoyment of their property.

58.   The Forest Service's mismanagement was unreasonable and the seriousness of the harm to the public, including Plaintiffs, outweighs the social utility, if any, of Defendants' conduct.

59.   By mismanaging the prescribed pile burns, the USFS failed to ensure the safety of neighboring residents and landowners. The Forest Service exposed every member of the public, residing and/or owning property in Sandoval County, to a foreseeable danger of personal injury, death, and/or a loss of or destruction real and personal property.

## COUNT FOUR
### TRESPASS

60.   The Cerro Pelado Fire constitutes trespass, because it caused flames, smoke, soot, or ash to invade Plaintiffs' property in New Mexico.

61.     The Forest Service admits that the Pino West Prescribed Burn escaped prescription on federal land, directly causing a wildfire.

62.     However, as described in the preceding sections, while the Forest Service only intended to ignite the initial prescribed burn, its mismanagement and lack of oversight was reckless and amounts to negligence.

63.     For the same reasons previously stated, the Forest Service's conduct was also abnormally dangerous and an inherently dangerous activity and the proximate cause of the Cerro Pelado Fire.

64.     The Cerro Pelado Fire also constitutes as an invasion of the Plaintiffs' possessory interest in their land because it physically entered their land and destroyed homes, possessions, and trees on the land.

65.     Therefore, Because the Forest Service's conduct is negligent and reckless, and an extra hazardous activity, and because the Cerro Pelado Fire physically invaded the Plaintiffs' land, the Fire is a trespass under New Mexico State law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant, the United States of America, as follows:

A.     Entry of judgment in favor of Plaintiffs and against Defendant for all damages allowable under federal or New Mexico law;

B.     Entry of judgment in favor of Plaintiffs and against Defendant for compensatory damages for property damage and personal injury that resulted from the negligence of Defendant's employees and agents;

C.      Awarding to Plaintiffs their costs and attorney's fees pursuant to the Equal Access

to Justice Act, 28 U.S.C. § 2412, or pursuant to any other applicable law/equity;

D.      And for such other and further relief as the Court deems just and proper.


Respectfully Submitted,

By:   */s/ Mark C. Dow*
        Mark C. Dow, mcd@bdsfirm.com
        Christopher P. Bauman, cpb@bdsfirm.com
        Cynthia L. Weisman, cw@bdsfirm.com
        Hope A. Bauman, hb@bdsfirm.com
        B & D LAW OFFICES, P.C.
        P.O. Box 30684
        Albuquerque, NM  87190
        (505) 883-3191
        *Counsel for All Plaintiffs*


By:   /s/*David R. Yepa*
        David R. Yepa, dyepa@nmlawgroup.com
        VANAMBERG ROGERS YEPA ABEITA GOMEZ
        & WILKINSON LLP
        5941 Jefferson St NE Ste. B
        Albuquerque, NM 87109-3409
        (505) 242-7352
        *General Counsel for The Pueblo of Jemez,*
        *a Sovereign Nation*


## **REQUEST FOR ADVISORY JURY**

Acknowledging that they are not entitled to a jury trial under the claims alleged herein, Plaintiffs respectfully move the Court to impanel an advisory jury in the exercise of its discretion under Rule 39(c) of the Federal Rules of Civil Procedure.