**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

PUEBLO OF JEMEZ, JEMEZ MOUNTAINS
ELECTRIC COOPERATIVE, INC., TC
COMPANY, TIMOTHY AND INA ACOMB,
BRIAN T. COX, QUENTIN AND DORIS
FARNHAM, CHRISTIAN GOSSEIN, CASEY
GREENLING, ANNA MARJEAN HOLLEMAN,
ROBERT S. HOTCHKISS, MELVIN AND
WANONA MAESTAS, DONALD J. AND
KAREN L. MILLER, JOHN F. AND CHRISTINE
M. PETERSON, RANDY J. AND LINDA M.
PETERSON, THEARON GIFFORD WILLIS, JR.,

       Plaintiffs,                              No. 1:25-cv-00382-KK-KRS

   v.

UNITED STATES OF AMERICA,

       Defendant.

---

**UNITED STATES' MOTION TO DISMISS**
**FOR LACK OF SUBJECT-MATTER JURISDICTION**

---

RYAN ELLISON
United States Attorney

Nicholas M. Sydow
Assistant United States Attorney
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 224-1460
nicholas.sydow@usdoj.gov

August 13, 2025                   *Attorney for the United States of America*

The United States respectfully requests the Court dismiss Plaintiffs' action for lack of subject-matter jurisdiction because the discretionary function exception, 28 U.S.C. § 2680(a), bars Plaintiffs' claims under the Federal Tort Claims Act ("FTCA"). The Court's subject-matter jurisdiction is predicated on the United States' waiver of sovereign immunity. The FTCA's limited waiver of sovereign immunity excludes claims based on the actions of government employees when exercising or performing a discretionary function or duty. Where the discretionary-function exception applies, the Court lacks subject-matter jurisdiction and an action must be dismissed.

The U.S. Forest Service's fire-management decisions have consistently been held to be discretionary policy choices. In so holding, courts have recognized that the Forest Service's decisions as to how to fight forest fires—and to conduct prescribed burns to reduce the risk and harms from forest fires—are replete with judgment calls and the balancing of numerous policy considerations. The Tenth Circuit has further clarified that even where fire-management policies contain mandatory elements, a court must consider the overarching discretionary enterprise in assessing whether the discretionary function exception applies.

As a result, an FTCA action alleging negligence in the Forest Service's handling of a prescribed burn or wildfire is very likely barred by the discretionary function exception. To overcome this hurdle, a plaintiff—at a minimum—needs to allege that a government employee violated a mandatory and specific policy and that this required policy alters the nature of the Forest Service's activity from a discretionary to a non-discretionary one. Here, Plaintiffs allege that the Forest Service negligently conducted the Pino West prescribed burn and that smoldering embers from the prescribed burn ignited the Cerro Pelado Fire. In an effort to avoid the discretionary function exception, Plaintiffs point to elements of the Pino West Prescribed Burn Plan that they claim the Forest Service violated. This attempt does not establish that the Forest Service's

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 1

decisions in conducting the Pino West Prescribed Burn were not discretionary, policy-based decisions such that the Court has jurisdiction over this case.

First, the allegations in Plaintiffs' Complaint do not establish that Forest Service personnel failed to follow the Burn Plan. The Burn Plan's requirements provide room for employees to make discretionary decisions, such as how often or in what manner to monitor burn piles or when to declare a wildfire. The Complaint's second-guessing of these discretionary choices does not convert the handling of a prescribed burn into a non-discretionary activity. Second, Plaintiffs' allegations describe Forest Service employees *following* the Burn Plan by conducting the prescribed burn during a period of widespread snow cover and then checking burn piles after the burn was conducted. Third, even if the Complaint could be read as alleging the violation of a mandatory component of the Burn Plan, the general activity challenged in Plaintiffs' Complaint of the Forest Service's management of a prescribed burn is a discretionary function for which the United States has not waived its sovereign immunity. Finally, the planning and implementation of prescribed burns involve numerous policy-based considerations, such that the Forest Service's decisions fall within the discretionary function exception. Therefore, the United States requests the Court dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1).[1]

## BACKGROUND[2]

**PLAINTIFFS' ALLEGATIONS:**

1.    Plaintiffs—the Pueblo of Jemez, Jemez Mountain Electric Cooperative, TC, Company, and 18 individual landowners—filed suit against the United States under the FTCA for

---

[1] Under D.N.M.LR-Civ. 7.1(a), the United States sought Plaintiffs' position on this motion and they oppose the motion.

[2] By filing this Motion to Dismiss under Rule 12(b)(1), the United States does not admit, and preserves all rights to contest, all other defenses to this action, including that Plaintiffs' Complaint

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 2

damages arising from alleged negligent or wrongful acts and omissions of the Forest Service related to the 2022 Cerro Pelado Fire. Doc. 1 ("Compl.") at 1–2, 6–7, 16, ¶¶ 2–5, 26.

2.      Plaintiffs bring claims for negligence, private and public nuisance, and trespass. *Id.* at 17–25, ¶¶ 30–65.

3.      Plaintiffs allege the Forest Service was negligent in its ignition and management of the Pino West prescribed burn, which became the Cerro Pelado Fire. *Id.* at 1–2, 5–6, 12–13, 16, 17–20 ¶¶ 24, 26, 36.

4.      Specifically, Plaintiffs allege that, "[b]etween January 19, 2022, and February 19, 2022, the USFS started the Pino West prescribed burn … by igniting numerous burn piles that were covered in snow." *Id.* at 2. Plaintiffs allege that "[t]hese smoldering burn piles were then left completely unattended and unmonitored during the ensuing weeks while quickly changing weather conditions … caused the snow cover to rapidly dissipate and disappear" with Red Flag Warnings "issued almost daily during April and May." *Id.* at 2 & n.2.

5.      Plaintiffs assert that the discretionary function exception to the FTCA does not apply because the Forest Service "demonstrated a clear disobedience to non-discretionary and mandatory USFS regulations and the Burn Plan." *Id.* at 6; *see also id.* at 16 ¶ 27 ("The discretionary function exception to the FTCA does not apply because the conduct described above violated the mandatory requirements of the Burn Plan….").

6.      Specifically, the Complaint bases its allegations of negligence on a set of actions that Plaintiffs contend constituted violations of the Burn Plan for the Pino West prescribed burn:

---

fails to state a claim for which relief may be granted. The facts summarized in this section are recited for purposes of the motion to dismiss only, based on the allegations contained in Plaintiffs' Complaint. The United States reserves its rights to challenge such facts should the case proceed past the motion-to-dismiss stage.

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 3

a.     First, Plaintiffs allege that the Forest Service did not follow the Burn Plan's directive that "continuous snow coverage of the forest floor over the entire burn unit" be present during the prescribed burn. *Id.* at 2, 9 ¶ 15(a). This Element of the Burn Plan stated that the "Burn Boss will monitor weather conditions for days following the day of ignitions to assure snow cover will persist until the burn is declared out."[3] *Id.* at 9 ¶ 15(a); *see also* Compl., Ex. 1 at 127–28[4] (Doc. 1-2 at 20–21) (stating in Element 8(A) that the "implementation schedule" or "ignition time frame" is "[w]henever snow is consistently on the ground" and in Element 9(A)(1) that a "pre-burn consideration" is to "[e]nsure snow cover is adequate and conditions will inhibit spread of a sustained surface fire"). Plaintiffs allege that by "mid-to-late March 2022, the required continuous snow cover disappeared." *Id.* at 3; *see also id.* at 11 ¶ 17, 13 ¶ 24(a).

b.     Second, Plaintiffs allege that the Forest Service failed to monitor the burn piles between February 19 and April 20. *Id.* at 2–3, 13–14 ¶ 24(c). They contend that the Burn Plan "requires weather monitoring/documentation as well as 'visual monitoring will be used to assess both the fire behavior of the piles and to ensure desired consumption of the piles.'" *Id.* at 10 ¶15(e) (quoting Compl., Ex. 1 at 137 (Doc. 1-2 at 30)). Plaintiffs also allege that the Burn Plan required "[a]dequate patrol, by fire red-carded personnel, to ensure that the burn does not escape the perimeter after ignition is completed" and that Forest Service personnel "[r]e-visit the pile burned

---

[3] Plaintiffs also state that "[t]here is no evidence that the weather conditions were monitored" and "[t]here is also no indication that the Pino West pile burns were ever 'declared out.'" Compl. at 13 ¶ 24(b). Yet, the Exhibits to Plaintiffs' Complaint include weather forecasts for each day of the prescribed burn. Compl., Ex. 1 at 156–74 (Doc. 1-2 at 49–67). And Plaintiffs' citation to page 94 of Exhibit 4 does not indicate that the prescribed burn was not "declared out."

[4] Mirroring Plaintiffs' Complaint, these page numbers are those in the bottom-right corner of the exhibit. Alternatively, the cited pages are 20 and 21 of the page numbers generated by CM/ECF.

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 4

units to establish if desired consumptions were met and project objectives achieved." Compl. at 11 ¶ 15(f) (quoting Compl., Ex. 1 at 137 (Doc. 1-2 at 30)); *see also id.* at 14 ¶ 24(d).

        c.      Third, Plaintiffs allege that when the Forest Service did check the burn piles on April 20, they found burn piles still smoldering and "attempted to extinguish the burning and smoldering embers by scattering them using hand tools." Compl. at 4. "[T]his allowed the high winds to fan the embers into flames, and on April 22, 2022, the Cerro Pelado Fire began…." *Id.* Plaintiffs allege that, in doing so, the Forest Service "failed to implement the mandatory contingency requirements to ensure the hold over burn was back in prescription." *Id.* at 11 ¶ 16; *see also id.* at 14–15, ¶ 24(e). Such contingency requirements are having available "1 Type 6 Engine or 3 red carded personnel" within 12 hours. *Id.* at 9 ¶ 15(c) (quoting Compl., Ex. 1 at 133–34 (Doc. 1-2 at 26–27)). Plaintiffs further quote a section of the Burn Plan stating that "[i]f prescription parameters are exceeded or anticipated to be exceeded," such "contingency resources will be used to help keep the fire in-check until it is back in prescription." Compl. at 10 ¶ 15(c) (quoting Compl., Ex. 1 at 133 (Doc. 1-2 at 26)).

        d.      Finally, Plaintiffs allege that the Forest Service "fail[ed] to notify and warn others of the … increase in wildfire danger….". Compl. at 5–6. Plaintiffs assert that under the Burn Plan, the Burn Boss should have declared a wildfire when "[t]he fire behavior exceed[ed] the limits described in the prescribed fire plan." Compl. at 10 ¶ 15(e) (quoting Compl., Ex. 1 at 134 (Doc. 1-2 at 27)); *see also id.* at 15 ¶ 24(g). The cited provision of the Burn Plan provides that the "designated Burn Boss can make the recommendation of wildfire conversion to the agency administrator when he/she determines that" these "conditions or events have occurred, or [are] likely to occur, and cannot be mitigated within the next burning period…." Compl., Ex. 1 at 134 (Doc. 1-2 at 27).

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 5

7.     Plaintiffs bring claims for private and public nuisance based on the Forest Service's alleged wrongful acts and omissions in connection with the Cerro Pelado Fire. Plaintiffs allege that the Fire "created harmful conditions that adversely impacted the health of the public due to the smoke, ash, soot, and other forms of environmental conditions" which "interfered with Plaintiffs' comfortable occupancy, use, and/or enjoyment of their property…." Compl. at 23 ¶ 53.

8.     Finally, Plaintiffs bring a trespass claim. They allege that the Cerro Pelado Fire was the result of the Forest Service's negligent, reckless, and extra hazardous activity. *Id.* at 25 ¶ 65. Further, Plaintiffs allege that the Cerro Pelado Fire "constitutes trespass, because it caused flames, smoke, soot, or ash to invade Plaintiffs' property…." *Id.* at 24 ¶ 60; *see also id.* at 25 ¶ 64.

**JUDICIALLY NOTICEABLE FIRE MANAGEMENT STATUTES, REGULATIONS, AND POLICIES:[5]**

9.     The Forest Service is responsible for managing National Forest land. 16 U.S.C. §§ 1600–1614. Accordingly, the Forest Service must have land and resource management plans for each National Forest unit. *Id.* § 1604. The Santa Fe National Forest Plan ("Forest Plan")—as amended through Amendment 13—was in effect at the time of the Pino West prescribed burn and Cerro Pelado Fire. **Exhibit 1**.[6]

---

[5] The Court can take judicial notice of publicly available statutes, regulations, and policy manuals without converting a motion to dismiss to one for summary judgment. *See* Fed. R. Evid. 201(b); *Petrella v. Brownback*, 787 F.3d 1242, 1252 n.2 (10th Cir. 2015) (statutes); *United States v. Coffman*, 638 F.2d 192, 194 (10th Cir. 1980) (regulations); *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052, 1064 (10th Cir. 2017) (manuals); *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) ("[A]dministrative agency's publicly available files . . . traditionally qualify for judicial notice."). Further, judicially noticing publicly available materials does not convert a facial 12(b)(1) challenge to a factual one. *Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017) (In facial challenge, court "may take judicial notice of matters of public record.").

[6] For the Court's convenience and clarity of the record, the United States attaches relevant pages of the Forest Plan that was in force at the time of the Pino West prescribed burn and Cerro Pelado Fire. A new Forest Plan was subsequently issued later in 2022. The current Forest Plan can be found online: https://www.fs.usda.gov/r03/santafe/planning/forest-plan.

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 6

10.     The Forest Plan contemplates the use of prescribed burns and includes among its fire-management goals that the Forest Service "[u]tilize prescribed fire as a tool where it can effectively accomplish resource management objectives." *Id.* at 22. The Forest Plan affords the Forest Service discretion by instructing the Forest Service to consider various factors when deciding how to respond to wildfires and escape fires. *Id.* at 93.

11.     Forest Service operations are also guided by the Forest Service Manual ("the Manual"). *See* **Exhibit 2**, FSM §§ 5103.1–5103.5.[7] The Manual—like the Forest Plan— relies on the Forest Service to make judgment calls after weighing competing risks and objectives when engaging in fire management. *Id.* §§ 5102, 5105. And the Manual repeatedly impresses the importance of Forest Service discretion in the context of fire management. *Id.* §§ 5103, 5103.1(1), 5103.5(2). Forest Service "[e]mployees are expected and empowered to be creative and decisive, to exercise initiative and accept responsibility, and to use their training, experience, and judgment to implement the agency's mission." *Id.* § 5102(5).

12.     Both the Manual's general fire management section and its prescribed fire section recognize that "reasonable discretion in decision-making may be required" and that "Forest Service employees must use their best judgment in applying the guidance contained in these references to real-life situations" because "the nature of the wildland fire environment is often dynamic, chaotic, and unpredictable." Exhibit 2, FSM § 5107; *see also* **Exhibit 3**, § 5140.6 (identical language in prescribed-fire section). And the Manual calls for Forest Service employees

---

[7] Relevant pages of the Forest Service Manual operative at the time of the Pino West prescribed burn and Cerro Pelado Fire are attached to this Motion as **Exhibits 2** and **3**. The Forest Service Manual, including those provisions attached as Exhibits, can be found online here: https://www.fs.usda.gov/im/directives/dughtml/fsm_5000.html.

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 7

in planning and implementing prescribed fire projects to consider various factors and weigh competing objectives. Exhibit 3, FSM § 5140.2(2).

13.     The Manual also provides general guidance about conducting prescribed fires. *Id.* § 5140.31(1). Before conducting a prescribed fire, the Manual instructs the Forest Service to prepare a site-specific burn plan as described in the National Wildfire Coordinating Group Interagency Prescribed Fire Planning and Implementation Procedures Guide ("Prescribed Fire Guide" or "PMS 484"). *Id.* § 5142.6(1). The Prescribed Fire Guide is Forest Service policy applicable to prescribed fire operations, organization, planning, and implementation. *Id.* §§ 5142.3(2), 5142.7, 5140.3(3).

14.     The Prescribed Fire Guide affords the Forest Service discretion to balance risks and competing objectives during the planning and implementation of prescribed burns. **Exhibit 4** at 17, 30.[8] The Prescribed Fire Guide acknowledges "[p]rescribed fires present an inherent level of risk." *Id.* at 16. But it also emphasizes "[t]here is an inherent risk in not taking action and it should not be assumed that the no-action alternative is the least-risk alternative." *Id.* at 3. Thus, "[t]he overall prescribed fire planning process includes a risk assessment[] and reflects an understanding of the interaction of objectives and implementation limitations for the project." *Id.* at 16.

## LEGAL STANDARDS

### I.     12(b)(1) Motions for Lack of Subject-Matter Jurisdiction

The United States' motion to dismiss presents a facial challenge to subject-matter jurisdiction over Plaintiffs' claims. Plaintiffs bear the burden of establishing subject-matter jurisdiction. *Audubon of Kansas, Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1108 (10th

---

[8] The United States attaches relevant portions of the operative Prescribed Fire Guide in effect at the time of the Pino West prescribed burn. The Prescribed Fire Guide was since amended in May 2022. That version is available online: https://fs-prod-nwcg.s3.us-gov-west-1.amazonaws.com/s3fs-public/publication/pms484.pdf

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 8

Cir. 2023). "Since federal courts are courts of limited jurisdiction, we presume no jurisdiction

exists absent an adequate showing by the party invoking federal jurisdiction." *United States ex rel.*

*Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

A challenge to the Court's subject-matter jurisdiction under the FTCA is properly brought

under Federal Rule of Civil Procedure 12(b)(1). *Zumwalt v. United States*, 928 F.2d 951, 952 (10th

Cir. 1991). "As a general rule, Rule 12(b)(1) motions to dismiss for lack of jurisdiction take one

of two forms: (1) facial attacks; and (2) factual attacks." *Paper, Allied-Indus., Chem. & Energy*

*Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). "Under a facial

attack, the movant merely challenges the sufficiency of the complaint, requiring the district court

to accept the allegations in the complaint as true." *Id.* By contrast, in a factual attack "the movant

goes beyond the allegations in the complaint and challenges the facts upon which subject matter

jurisdiction depends." *Id.*

Here, the United States brings a facial Rule 12(b)(1) challenge to the sufficiency of the

Complaint's factual allegations to establish jurisdiction. For a facial 12(b)(1) challenge, the Court

"must apply a standard patterned on Rule 12(b)(6)." *Garling v. United States Env't Prot. Agency*,

849 F.3d 1289, 1293 n.3 (10th Cir. 2017) (citation omitted). The Court therefore must "accept as

true all well-pleaded factual allegations in [the] complaint and view these allegations in the light

most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The

Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"To avoid dismissal of an FTCA claim under the discretionary-function exception, a

plaintiff must allege facts that place its claim facially outside the exception." *Franklin Sav. Corp.*

*v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999). Accordingly, Plaintiffs must plead "factual

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 9

content that allows the court to draw the reasonable inference" that the discretionary function exception does not apply. *Iqbal*, 556 U.S. at 678. Thus, the Court's "sole inquiry . . . is to determine whether Plaintiffs have overcome the discretionary function exception by pleading facts sufficient to demonstrate a clear waiver of sovereign immunity." *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1538 (10th Cir. 1992).

## II.    The Discretionary Function Exception to the FTCA

Plaintiffs' negligence, nuisance, and trespass claims are brought under the FTCA. The FTCA waives sovereign immunity under narrow circumstances. 28 U.S.C. § 1346(b). The Tenth Circuit has articulated three principles governing FTCA waiver: "(1) that a waiver of sovereign immunity must be strictly construed, in terms of its scope, in favor of the sovereign; (2) that exceptions to the FTCA are to be narrowly construed; and (3) that the party suing the government bears the burden to prove a waiver of sovereign immunity." *Ohlsen v. United States*, 998 F.3d 1143, 1154 (10th Cir. 2021) (cleaned up). Without the FTCA's waiver of sovereign immunity, this Court lacks jurisdiction over Plaintiffs' claims. The issue of sovereign immunity should be addressed in the first instance. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

The FTCA "carves out several important exceptions" to its waiver of sovereign immunity. *Ohlsen*, 998 F.3d at 1154. Relevant here, the FTCA excludes from its waiver of sovereign immunity claims arising out of acts or omissions of government employees "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This is referred to as the discretionary function exception. *Knezovich v. United States*, 82 F.4th 931, 934 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2521 (2024) ("Under the [FTCA], a government actor cannot be sued for conducting a so-called 'discretionary function,' where the official must employ an element of

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 10

judgment or choice in responding to a situation."). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Ball v. United States*, 967 F.3d 1072, 1076 (10th Cir. 2020) (citation omitted). Congress explicitly chose to protect government actors exercising their discretion "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To this end, the discretionary function exception applies regardless of government employees' negligence or wrongful acts. *See Daigle*, 972 F.2d at 1540 ("Harsh as it may be, whether the Army substantially endangered Plaintiff's health and welfare is irrelevant to the discretionary function determination. The question is not whether the army fell short in its efforts . . . but whether the Army's shortcomings involved violations of specific, mandatory directives.").

To determine whether the discretionary function exception applies, the Court must apply a two-pronged test that the Supreme Court laid out in *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). Under this test, the Court must "first consider whether the action is a matter of choice for the acting employee" and then "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Knezovich*, 82 F.4th at 936 (quoting *Berkovitz*, 486 U.S. at 536). To prevail on the first prong, Plaintiffs must show "that the challenged decision involved no element of judgment or choice." *Id.* at 937 (citation omitted). And they must do so by showing the Forest Service "violated a federal statute, regulation, or policy that is both specific and mandatory." *Id.* Language is *mandatory* if it "specifically prescribes a course of action" and the Forest Service "would have no choice" but to take that action. *Id.* To be *specific*, language must "specify the precise manner" in which the Forest Service must respond. *Knezovich*, 82 F.4th at 939. In other words, there must be a "fixed or readily ascertainable standard" mandating

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 11

the government official to take certain specific action. *Ohlsen*, 998 F.3d at 1160 (citation omitted). Further, it is not enough for Plaintiffs "to point to a handful of policy mandates in an endeavor fundamentally defined by discretion." *Knezovich*, 82 F.4th at 938. This is because "[t]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion." *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1222 (10th Cir. 2016) (citation omitted).

If the challenged conduct is deemed discretionary under the first prong, the Court proceeds to the second prong to "determine whether that judgment is the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. The discretionary function exception shields decisions that "implicate public policy concerns" or are "susceptible to policy analysis." *Knezovich*, 82 F.4th at 937. "Where the government is forced . . . to balance competing [policy] concerns, immunity shields the decision." *Miller v. United States*, 163 F.3d 591, 596 (9th Cir. 1998) (quoted in *Knezovich*, 82 F.4th at 942). Instead of "asking whether policy analysis is the *actual* reason for the decision in question," courts ask "categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns." *Ball*, 967 F.3d at 1076 (brackets and citation omitted). This "prevent[s] judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quotation marks and citation omitted).

For the discretionary function exception to apply, both prongs must be met. *Ohlsen*, 998 F.3d at 1161. However, "[i]f the plaintiff fails to show that the conduct was mandatory rather than discretionary [at the first prong], the exception typically applies." *Knezovich*, 82 F.4th at 936–37. That is because when a plaintiff fails to satisfy the first prong, courts "presume that a government agency's acts are grounded in policy." *Ball*, 967 F.3d at 1079. To overcome this presumption,

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 12

Plaintiffs must "allege facts showing that the actions were actually not policy-oriented." *Hardscrabble Ranch*, 840 F.3d at 1222. Where the discretionary function exception applies, an action must be dismissed because "the discretionary function exception strip[s] the court of jurisdiction to hear the fire victims' claims." *Knezovich*, 82 F.4th at 943 n.7.

## ARGUMENT

I.    <u>**Prong One**</u>**: Plaintiffs Fail to Allege that the Forest Service's Actions in Conducting the Pino West Prescribed Burn Lacked an Element of Judgment or Choice.**

Plaintiffs fail to allege that the Forest Service's challenged conduct related to the Pino West prescribed burn and the Cerro Pelado Fire lacked an element of judgment or choice. To the contrary, policies governing prescribed burns and wildfire responses afford the Forest Service the ability to exercise judgment and choice—including in the types of activities, such as monitoring prescribed burns and declaring wildfires, challenged by Plaintiffs. The elements of the Pino West Prescribed Burn Plan that Plaintiffs allege the Forest Service violated do not alter this conclusion. Plaintiffs do not identify specific, mandatory elements of the Burn Plan that the Forest Service failed to follow. And even if the violation of a specific, mandatory element of the Burn Plan could be identified, it would not alter the general nature of a prescribed burn from a discretionary enterprise outside of FTCA liability. Therefore, Plaintiffs cannot establish jurisdiction based on the first prong of the discretionary function exception.

### A.    *The discretionary function exception applies broadly to the Forest Service's fire management activities, including prescribed burns.*

Courts consistently have held that fire-management and prescribed-burn policies afford the Forest Service discretion. Thus, Forest Service conduct related to these policies falls outside the FTCA's waiver of sovereign immunity. In the wildfire context, the Tenth Circuit repeatedly has held that fire-management policies are not specific enough to deprive the Forest Service of

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 13

discretion. *See, e.g.*, *Knezovich*, 82 F.4th at 939 ("[T]he cited [Forest Service Manual] provision does not 'specify the precise manner' in which the Forest Service must respond to a human-caused fire."); *Ohlsen*, 998 F.3d at 1162 (Plaintiffs "can't point to any 'specific and mandatory' provisions directing where and when the Forest Service was to park the trucks or post the guards."); *Hardscrabble Ranch*, 840 F.3d at 1222 ("[N]either the Checklist nor other [Forest Service] procedures identified by Hardscrabble explicitly told 'the Forest Service to suppress the fire in a specific manner and within a specific period of time.'").

The Tenth Circuit has yet to analyze a prescribed burn policy under the discretionary function exception. That said, other courts have concluded that the Forest Service is afforded discretion by the policies applicable to prescribed burns. *See Thune v. United States*, 872 F. Supp. 921, 924 (D. Wyo. 1995) ("[T]he ultimate decision of whether the burn should proceed was based on the judgment of [the Forest Service Burn Boss]."); *Michigan Dep't of Nat. Res. v. United States*, No. 2:11-CV-303, 2012 WL 13028277, at *5 (W.D. Mich. May 29, 2012) (Forest Service "has been given discretion with regard to making the final decision to initiate a prescribed burn, making staff and equipment decisions as to how to control flare ups, and making staff and equipment decisions in the event that any wildfires develop as a result of the prescribed burn."). Plaintiffs in other cases challenging the Forest Service's management of prescribed burns have not even attempted to argue that the first prong of the discretionary function test was not satisfied. *See Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1158 (11th Cir. 2020); *Esquivel v. United States*, 21 F.4th 565, 574 (9th Cir. 2021).

In this District, Judge Browning recently opined that "[s]overeign immunity protects the Forest Service in any FTCA lawsuit in which a plaintiff challenges the Forest Service's decision to conduct a prescribed burn." *Dolan v. FEMA*, ___ F. Supp. 3d ___, No. 1:23-cv-869-JB-JFR,

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 14

2025 WL 2023315, at *58 (July 18, 2025). This includes decisions "regarding the monitoring of smoldering debris piles" which "involve[] discretionary decisions." *Id.* at *57 (citing *Ruffino v. United States*, 583 F. Supp. 3d 1288, 1290 (E.D. Cal. 2022), for the proposition that there was "discretion involved in the USFS's monitoring of snow-covered, still-smoldering vegetation following a controlled burn"). Thus, the court "predict[ed] that the Tenth Circuit would apply the discretionary-function exception to the Forest Service's conduct in initiating prescribed burns, because the Forest Service's prescribed burning actions—both its decision to initiate the prescribed burn and its methods of conducting the prescribed burn—meet [the] requirements to apply the discretionary-function exception." *Id.* at *56; *see also Vigil v. FEMA*, No. 1:23-cv-941-JB-JFR, 2024 WL 2404487, at *34 (D.N.M. May 23, 2024) ("Given the degree of discretion involved in decisions related to controlled burns, an FTCA claim based on the USFS's negligence regarding the Hermit's Peak Fire is not likely to survive a motion to dismiss on jurisdictional grounds.").[9]

---

[9] Two federal district courts have denied, at least in part, motions to dismiss on discretionary-function grounds in prescribed-burn contexts. *State of Fla. Dep't of Agric. & Consumer Servs. v. United States*, No. 4:09-CV-386/RS-MD, 2010 WL 3469353 (N.D. Fla. Aug. 30, 2010); *Casper v. United States*, No. CIV. 15-5087-JLV, 2017 WL 11700094 (D.S.D. Sept. 12, 2017). Neither case is persuasive. In *State of Florida Department of Agriculture*, the Forest Service offered "admissions [that] demonstrate[d] a clear disobedience to mandates that are not discretionary." 2010 WL 3469353, at *4. Those admissions included "not creating a sufficient Burn Plan" and "acting contrary to the Burn Plan by using aerial ignition." *Id.* Based on these admissions, the district court denied the United States' motion to dismiss, but the court explicitly did not decide "the applicability of the discretionary function exception . . . for management ignited prescribed fires in general." *Id.* And crucially, the Eleventh Circuit, the Northern District of Florida's reviewing court, subsequently held that the discretionary function exception applies to prescribed burns. *See Foster Logging, Inc. v. United States*, 973 F.3d 1152 (11th Cir. 2020).

In *Casper*, the plaintiffs identified two very specific, mandatory Burn Plan requirements: obtaining fuels information from a specified weather station and having two, rather than three, people staffing a fire engine. 2017 WL 11700094, at *5, *7–*8. The court concluded that Plaintiffs' claim based on those particular actions could survive a motion to dismiss, while other allegations of not adequately determining drought conditions or fuel loads or creating an insufficient holding plan, were dismissed. *Id.* at *5–*7.

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 15

Under Tenth Circuit law, arguably mandatory language contained in certain provisions of the Forest Service Manual or other policies does not eliminate the general discretion of the Forest Service to make judgment calls when engaged in fire management. When assessing whether a particular Forest Service policy specifically prescribes a course of action, the Tenth Circuit considers whether the language is mandatory and specific in the context of the policy as a whole and considering the discretionary nature of the Forest Service's broader goals. *Hardscrabble Ranch*, 840 F.3d at 1222 (concluding that the existence of some mandatory language does not eliminate discretion); *Knezovich*, 82 F.4th at 940 (same); *Weiss v. United States*, 889 F.2d 937, 938 (10th Cir. 1989) (declining to read Forest-Service-Manual language "out of context" because "ostensibly mandatory provisions must be read 'in their entirety.'") (citation omitted).

Two recent cases illustrate this principle. In *Hardscrabble Ranch*, the Forest Service responded to a lightning-strike fire by instituting a partial suppression strategy—i.e., letting the fire continue to burn while also containing the fire so that it would not spread onto private property. 840 F.3d at 1217-18. The Forest Service made this decision for several reasons including the remote nature of the area; the presence of control features in the landscape; a predicted snowstorm; and to help reduce the amount of available fuel for a later fire. *Id.* at 1218. Before selecting its response, the Forest Service did *not* fill out a "Decision Checklist" containing several *yes* or *no* questions. *Id.* at 1219. If the Forest Service had answered *yes* to one of the questions, then— plaintiff asserted—the Forest Service would have been required to suppress the fire instead of letting it burn. *Id.* at 1220. The plaintiff maintained the Checklist's completion was mandatory, and the Tenth Circuit assumed the same. *Id.* at 1221. Even so, the Tenth Circuit rejected plaintiff's argument that the Checklist removed the Forest Service's "choice or judgment regarding what measures to take" because to answer the questions, the Forest Service necessarily had to weigh

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 16

various considerations. *Id.* at 1221. These considerations included "the threat to life, property, and public and firefighter safety; the acceptability of potential effects on natural resources; the degree of risk involved, and whether that risk was acceptable to the Forest Service; the degree to which fire-fighting resources might be taken up by other fire activity; and any other issues USFS personnel thought pertinent." *Id.* "Those considerations, and their weighing," the Tenth Circuit concluded, were "inherently discretionary." *Id.* Thus, even mandatory completion of the Checklist "did not remove USFS employees' choice or judgment regarding what measures to take," nor did it "specifically prescribe a course of action for an employee to follow." *Id.* (brackets and citation omitted). Thus, the court concluded that the discretionary function exception applied because the "existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion." *Id.* at 1222 (citation omitted).

In *Knezovich*, the Tenth Circuit again applied this principle. It noted that in *Hardscrabble Ranch*, the court "set out a standard for assessing the presence of mandatory language in a largely discretionary regulatory environment." *Knezovich*, 82 F.4th at 939 n.4. Plaintiffs in *Knezovich* had challenged the Forest Service's initial decision to monitor, rather than suppress, a fire and directed the court to a single provision in the Forest Service Manual that they contended removed the Forest Service's discretion to monitor human-caused fires. *Id.* at 938-39. The Tenth Circuit rejected plaintiffs' efforts to avoid the discretionary function exception for two reasons: First, "the cited provision d[id] not 'specify the precise manner' in which the Forest Service must respond to a human-caused fire." Second—and "more importantly"—the Tenth Circuit held that the Forest Service Manual "as a whole contains competing considerations that bear on a wildfire response." *Id.* at 940. "Considered in context," the Tenth Circuit reasoned, "the Forest Service Manual does not prevent the Service from making a judgment call in its initial response to a fire of human or

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 17

unknown origin" and to "conclude otherwise would strip the Forest Service of its ability to balance the safety, conditions, weather, and resource requirements that go into any fire response." *Id.* at 940. Again, the Tenth Circuit found the discretionary function exception applied, making clear that the Forest Service's "broader goal [of] . . . fire management . . . necessarily involves an element of discretion." *Id.* at 941 (citation and brackets omitted).

In addition to this wealth of authority finding fire management, including prescribed burns, to be discretionary functions, Forest Service policies and guidance are replete with statements that prescribed burns necessitate discretionary decision-making that considers various interests, weighs competing risks, and balances multiple objectives. *See supra* pp. 7–8, ¶¶ 10–14. The "[d]octrinal approach" used by the Forest Service "goes beyond strict compliance with procedural rules[] and promotes risk-based application of wildland fire management principles to improve decision making and firefighter safety." Exhibit 2, FSM § 5103. This is because "[t]he wildland fire management environment is complex and possesses inherent hazards that can—even with reasonable mitigation—result in harm." Exhibit 2, FSM § 5103.1(1). Moreover, "[i]n situations where guidance is uncertain, individuals are expected to apply their judgment while acting within leadership intent, doctrine, principles, policy, guides and training." Exhibit 2, FSM § 5103.5(2).

The Forest Service's need to weigh various considerations and evaluate risk exists specifically during the implementation of a prescribed burn. The Prescribed Fire Guide highlights that "[d]uring the implementation phase of prescribed fires, personnel may encounter uncertain and dynamic conditions, where they must continuously evaluate risks with an eye towards maintaining a safe working environment, meeting the prescribed fire objectives (on time, within budget and with available resources) and addressing social and political concerns." Exhibit 4 at 17; *see also id.* at 30 (during active ignition, actions will be adjusted to meet objectives as dictated

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 18

by fire geography and weather). And if a prescribed burn turns into a wildfire, the Forest Service must weigh other factors—such as the protection of life and property, management area objectives, cost, air quality and watershed, social acceptance, cultural resources, and threatened and endangered species—when determining the appropriate response. Exhibit 1 at 93.

These provisions of the Forest Service Manual, the Forest Plan, and the Prescribed Fire Guide all afford the Forest Service discretion by instructing it to consider and weigh competing risks and objectives during every phase of a prescribed burn. The Tenth Circuit has been clear that when the Forest Service is called on to weigh and assess various considerations to make decisions regarding the management of prescribed burns and wildfires, "[t]hose considerations, and their weighing, are inherently discretionary." *Hardscrabble Ranch*, 840 F.3d at 1221. In the end, it does not matter if Plaintiffs point to some mandatory-sounding language in the relevant policy documents, including the Burn Plan, because Forest Service prescribed-burn policies—read as a whole—require the weighing of competing considerations and thus afford discretion. *See Clark v. United States*, 695 F. App'x 378, 385–86 (10th Cir. 2017) ("Where the regulatory language 'mandates' the consideration of alternatives, the weighing of factors, or the application of policy priorities bounded by practical concerns, the language leaves to the decisionmaker's discretion how best to fulfill such 'mandatory' priorities."). Hence the Forest Service's decisions during the planning, igniting, and management of the Pino West prescribed burn and in response to the Cerro Pelado Fire all involved elements of judgment and choice.

### B.    *Plaintiffs' allegations regarding the Forest Service's compliance with the Burn Plan fail to establish the violation of a mandatory and specific law, regulation, or policy that can evade the discretionary function exception.*

In an effort to avoid the overarching principle that fire management activities are discretionary functions, Plaintiffs point to a handful of provisions in the Burn Plan for the Pino

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 19

West prescribed burn that they allege the Forest Service failed to follow. These allegations do not support the violation of specific, mandatory directives that would convert the Forest Service's fire management efforts from a discretionary function to an activity that can support an FTCA claim. Therefore, Plaintiffs' allegations that the Forest Service violated the Burn Plan do not meet their burden of establishing jurisdiction.

**First**, Plaintiffs allege that the Burn Plan required continuous snow coverage of the forest floor to conduct the prescribed burn. *See supra* p. 4, ¶ 6(a); Compl. at 2, 9 ¶ 15(a). The referenced part of the Burn Plan, Element 7(B)(1), states that the "Burn Boss will monitor weather conditions for days following the day of ignitions to assure snow cover will persist until the burn is declared out." Compl., Ex. 1 at 126 (Doc. 1-2 at 19); *see also* Compl., Ex. 1 at 127–28 (Doc. 1-2 at 20–21) (providing in Elements 8(A) and 9(A)(1) that the "implementation schedule" or "ignition time frame" is "[w]henever snow is consistently on the ground" and that a "pre-burn consideration" is to "[e]nsure snow cover is adequate and conditions will inhibit spread of a sustained surface fire"). This statement that the Burn Boss will monitor weather conditions "for days following the day of ignitions to assure snow cover will persist" does not specify the number of days for which weather will be monitored or what assurances the Burn Boss must obtain. As a result, it cannot support the violation of a policy that is "both specific and mandatory." *Knezovich*, 82 F.4th at 937.

Additionally, Plaintiffs do not allege that when the Forest Service implemented the Pino West prescribed burn between January 19 and February 19 that snow cover did not exist or that Forest Service personnel did not obtain weather forecasts for the following days. To the contrary, Plaintiffs' Complaint attaches documentation that the Burn Boss determined that the required weather conditions were met when approving the prescribed burn. Compl., Ex. 1 at 112 (Doc. 1-2 at 5) (noting that weather and staffing conditions could be met); at 119 (Doc. 1-2 at 12) (noting on

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 20

go/no-go checklist that prescription conditions were met on February 19); at 156–74 (Doc. 1-2 at 49–67) (weather forecasts for each day of ignition and following days). Plaintiffs instead allege that at least a month later, by "mid-to-late March 2022, the required continuous snow cover disappeared." Compl. at 3; *see also id.* at 11 ¶ 17, 13 ¶ 24(a). This does not allege that the Forest Service violated specific, mandatory weather-monitoring requirements in the Burn Plan.

**Second**, Plaintiffs allege that Forest Service personnel did not monitor the burn piles after their ignition as required by the Burn Plan. *See supra* pp. 4–5, ¶ 6(b); Compl. at 2, 11 ¶¶ 16-17, 18-19 ¶ 36(b), (f), (h) (alleging that the Forest Service did not check the pile burns between February 19 and April 20, 2022); *but see* Compl., Ex. 3 at 336–37 (Doc. 1-4 at 32–33) (statement from witness that piles were checked several times in March); Compl., Ex. 4 at 7 (Doc. 1-5 at 8) ("Supplemental reports … describe extensive checking and 'cold-trailing' of the slash piles in the weeks after the RX burn and up to April 20, when the slash piles were checked again for heat by fire crews."). Plaintiffs contend that this gap in time during which the pile burns allegedly were not checked violated Elements 20 and 21 of the Burn Plan concerning monitoring and post-burn activities. Compl. at 10–11 ¶ 15(e)–(f), 13–14, ¶ 24(c)–(d). These Elements, however, do not contain any specific, mandatory provisions that Plaintiffs allege the Forest Service did not follow. *See Knezovich*, 82 F.4th at 939 (to defeat the discretionary function exception a provision must "specify the precise manner" in which the Forest Service acts). Instead, the Burn Plan contains general statements that the prescribed burn will be monitored and an "adequate patrol" must be completed after the burn, leaving decisions about how and when to conduct such monitoring to the Forest Service's discretion. Specifically, Element 20 describes that during the prescribed burn, "visual monitoring will be used to assess fire behavior of piles" and "to ensure desired consumption of slash piles." Compl., Ex. 1 at 137 (Doc. 1-2 at 30). Element 21 concerns "post-

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 21

burn activities" and requires "[a]dequate patrol, by fire red-carded personnel, to ensure that the burn does not escape the perimeter after ignition is completed" and personnel to "[r]e-visit the pile burned units to establish if desired consumptions were met and project objectives achieved." *Id.*

Even if the Burn Plan could be read as containing the specific, mandatory provisions needed to avoid the discretionary function exception, Plaintiffs do not allege that the Forest Service violated any such provisions. Plaintiffs do not allege that while setting pile burns, the Forest Service did not monitor their fire behavior or consumption. And after the prescribed burn, Plaintiffs allege that the Forest Service *did* return to patrol the burn piles—at least on April 20. Indeed, it is this very action of checking the burn piles that Plaintiffs allege caused the Cerro Pelado Fire. *See* Compl. at 4. The Burn Plan contains no more specific requirement regarding the monitoring of the burn, including the frequency or timing of monitoring or patrols. Rather, how often and in what manner to monitor the prescribed burn is left to the discretion of Forest Service personnel. *See* Compl., Ex. 1 at 132 (Doc. 1-2 at 25), Element 16(A) ("Upon completion of the operational period the Burn Boss will … determine patrol status and frequency.").

**Third**, Plaintiffs allege that the Forest Service failed to comply with the contingency resources provisions of the Burn Plan. *See supra* p. 5, ¶ 6(c); Compl. at 4, 11 ¶ 16, 14-15 ¶ 24(e). Specifically, Plaintiffs allege that when the Forest Service personnel checked burn piles on April 20, they "attempted to extinguish the burning and smoldering embers by scattering them using hand tools." Compl. at 4. This decision as to how to handle embers in a burn pile, Plaintiffs allege, violated the Burn Plan's requirement "that if the Pino West fires went out of prescription the USFS was required to use, at a minimum, one 'type 6 engine,'[10] with a maximum response time of 12

---

[10] This is contrary to the language of the Burn Plan, which lists as "minimum contingency resources" "1 Type 6 Engine <u>or</u> 3 red carded personnel." Compl., Ex. 1 at 134 (Doc. 1-2 at 27), Element 17(C) (emphasis added).

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 22

hours until the fire 'is back in prescription.'" Compl. at 15 ¶ 24(e) (quoting Compl., Ex. 1 at 134 (Doc. 1-2 at 27)). This allegation is based on Element 17(C) of the Burn Plan, which states: "The minimum contingency resources needed to implement project is 1 Type 6 Engine[] or 3 red carded personnel. … The maximum response time allowed for any contingency resource will be 12 hours. … Dispatch will be contacted prior to implementation to ensure that the contingency resources are available." Compl., Ex. 1 at 134 (Doc. 1-2 at 27).

Plaintiffs allege that on April 20, two months after ignitions had been completed, the Pino West burn was out of prescription because there was not continuous snow cover and thus contingency resources should have been deployed. Compl. at 14–15 ¶ 24(e), 18 ¶ 36(c), (d). These allegations do not support a violation of any specific, mandatory requirement in the Burn Plan. Plaintiffs do not allege that the Forest Service failed to ensure that contingency resources were available prior to implementation of the Pino West prescribed burn or while the prescribed burn was being conducted in January and February 2022. *Cf.* Compl., Ex. 1 at 115–19 (Doc. 1-2 at 8–12) (listing in Go/No-Go Checklists that "contingency resources applicable to today's implementation" have been checked and are available).  Nor does the fact that Forest Service personnel found smoldering embers on a post-burn patrol establish that the Pino West prescribed burn was still ongoing by April and had gone out of prescription. Lastly, even if the prescribed burn could be deemed out-of-prescription at this point, the Burn Plan does not mandate how any contingency resources will be used, instead leaving such decisions to the discretion of the Burn Boss. *See* Compl., Ex. 1 at 134 (Doc. 1-2 at 27) (specifying that Burn Boss "can utilize contingency resources at any stage to assist with operations").

**Fourth**, Plaintiffs allege that "[b]y April 20, 2022, the USFS knew that the Pino West pile burns had exceeded the limits described in the Burn Plan and … knew or should have known that

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 23

its contingency actions would fail or were likely to fail, but refused to declare a wildfire and make the immediate required notifications." Compl. at 15 ¶ 24(g); *see also supra* p. 5 ¶ 6(d). Plaintiffs contend that this violated Element 18 of the Burn Plan, which provides that the "Burn Boss can make the recommendation of wildfire conversion to the agency administrator when he/she determines that one or more of the following conditions or events have occurred, or is likely to occur, and cannot be mitigated within the next burning period by utilizing the mitigation/holding or contingency actions identified in the burn plan: … The fire behavior exceeds limits described in the prescribed fire plan." Compl., Ex. 1 at 134 (Doc. 1-2 at 27) (*quoted in* Compl. at 10 ¶ 15(e)).

Even assuming that the discovery of smoking or smoldering burn piles on April 20 meant that the Pino West prescribed burn was ongoing and out of prescription, such that this provision was still operative, the decision whether to declare a wildfire is well within the discretion of the Burn Boss. Element 18 does not contain a specific, mandatory directive that can support a claim outside the discretionary function exception. The Burn Boss had discretion to assess whether the existence of smoldering burn piles "exceed[ed] limits described in the prescribed fire plan." Then, it was within the Burn Boss's discretion to determine whether the efforts to scatter embers with hand tools were likely to fail such that he should recommend to the agency administrator that a wildfire be declared. And these efforts did not immediately fail—the Cerro Pelado Fire did not start until two days later. Thus, it was not only a discretionary choice, but rational, not to declare a wildfire based on the presence of smoldering embers.

Finally, even if Plaintiffs' Complaint can be read as alleging the violation of "a handful of policy mandates," *Knezovich*, 82 F.4th at 938, or "some mandatory language," *Hardscrabble Ranch*, 840 F.3d at 1222, Plaintiffs still cannot avoid the discretionary function exception. This is because "fire management necessarily involves an element of discretion," *Knezovich*, 82 F.4th at

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 24

941, and the Forest Service Manual—and other relevant policies—"contain[] competing considerations that bear on" the planning and implementation of the Pino West prescribed burn, *id.* at 940. The big-picture decisions of whether and how to conduct a prescribed burn—including its monitoring and control—are discretionary choices that are not altered by the presence of a few, mandatory embedded elements. *Id.* at 938 (noting that "it did not suffice to point to a handful of policy mandates in an endeavor fundamentally defined by discretion"). Therefore, the first prong of the discretionary function exception is met.

## II.     <u>Prong Two</u>: Fire Management—Including Management of Prescribed Burns—Necessarily Implicates Public Policy Concerns.

For the discretionary function exception to apply, the Court must "first consider whether the action is a matter of choice for the acting employee," and then "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Knezovich*, 82 F.4th at 936 (citation omitted). The exception shields discretionary decisions that "implicate public policy concerns" or are "susceptible to policy analysis." *Id.* at 937. When a plaintiff fails to satisfy the first prong, courts "*presume* that a government agency's acts are grounded in policy" and that the second prong is met. *Ball*, 967 F.3d at 1079. To overcome this presumption, Plaintiffs must "allege facts showing that the actions were actually not policy-oriented." *Hardscrabble Ranch*, 840 F.3d at 1222 (citation omitted).

Here, Plaintiffs fail to overcome this presumption. Plaintiffs do not allege in the Complaint any facts that the Forest Service's decisions in implementing the Pino West prescribed burn were not grounded in policy choices. *Daigle*, 972 F.2d at 1542 ("To overcome this presumption, a plaintiff 'must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.'") (citation omitted). To the contrary, it is settled that fire management implicates policy considerations,

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 25

including "balancing practical considerations of funding and safety as well as concerns of a fire's impact on wildlife, vegetation, and human life." *Knezovich*, 82 F.4th at 942–43 (citation omitted); *see also Strawberry Water Users Ass'n v. United States*, 109 F.4th 1287, 1293–94 (10th Cir. 2024) (describing such decisions as "amount[ing] to policy judgments"). Other possible considerations include "the needs to protect private property, ensure firefighter safety, reduce fuel levels, and encourage natural ecological development," which "are precisely the kind of social, economic, and political concerns the discretionary function exception was designed to shield." *Hardscrabble Ranch*, 840 F.3d at 1222–23. Accordingly, the Tenth Circuit has had "little trouble concluding that the 'nature of the actions' taken by the Forest Service [when engaged in fire management] involved the exercise of policy judgment of the sort the exception is meant to protect." *Knezovich*, 82 F.4th at 942 (citation omitted).

Prescribed burns in particular—like other fire management activities—naturally implicate public policy concerns. In the prescribed-fire context, "numerous policy considerations come into play regarding whether and to what extent a[n] . . . employee or official might take a particular action during the monitoring or maintaining [of] a controlled burn." *Foster Logging*, 973 F.3d at 1164. These considerations include the safety of employees and the public, how many resources to devote, the need to encourage ecological development, the need for a prescribed burn, and potential risks to private and public property. *Id.* Such considerations, according to the Eleventh Circuit, "are precisely the sort of social, economic, political, and public policy concerns our Court has recognized as justifying the applicability of the discretionary-function exception." *Id.* at 1165. Consequently, the "alleged conduct—the steps and measures taken to safely execute a controlled burn—by its nature, involves an exercise of discretion and considerations of social, economic, political, and public policy." *Id.* at 1167. Other courts have similarly held that prescribed burns

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 26

necessarily involve public policy choices. *See Ruffino*, 583 F. Supp. 3d at 1294 ("[W]hen exercising [prescribed burn] judgment, the Forest Service's employees must make . . . policy choices."); *Thune*, 872 F. Supp. at 925 ("[T]he efforts to fight the [prescribed-burn] escaped fire . . . are governed by considerations of public policy and protected by the discretionary function exception."); *Michigan Dep't of Nat. Res.*, 2012 WL 13028277, at *6 ("Clearly, the [Forest Service's] decisions to initiate the prescribed burn at issue and to suppress the resulting wildfire were based on the balancing of various objectives and goals.").

Here, the nature of the actions the Forest Service allegedly took, including when and how to monitor the prescribed burn, and the response to the discovery of smoldering burn piles, are clearly susceptible to policy analysis. It does not matter "whether policy analysis is the *actual* reason for the decision[s] in question"; it only matters "whether the kind of conduct at issue can be based on policy concerns." *Ball*, 967 F.3d at 1076 (citation omitted). And the Forest Service's conducting a prescribed burn necessarily involves balancing such policy-based considerations— considerations such as funding, personnel and public safety, a fire's impact on wildlife, vegetation, and human life, the need to reduce fuel levels and encourage ecological development, potential risks to property, and the risk of both action and inaction. *Foster Logging, Inc.*, 973 F.3d at 1164 (detailing considerations); *Hardscrabble Ranch*, 840 F.3d at 1222–23 (same); *Knezovich*, 82 F.4th at 942–43 (same).

## CONCLUSION

Plaintiffs fail to allege—and cannot show—that this Court has subject-matter jurisdiction over their FTCA claims because the discretionary function exception applies. Therefore, the United States respectfully requests that the Court grant its motion under Federal Rule of Civil Procedure 12(b)(1) and dismiss Plaintiffs' Complaint for lack of subject-matter jurisdiction.

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 27

RYAN ELLISON
United States Attorney

*/s/ Nicholas M. Sydow*
Nicholas M. Sydow
Assistant United States Attorney
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 224-1460
nicholas.sydow@usdoj.gov

**Attorney for the United States of America**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 13, 2025, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Nicholas M. Sydow*
Nicholas M. Sydow
Assistant United States Attorney

United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction
*Pueblo of Jemez v. United States*, No. 1:25-cv-00382-KK-KRS
Page 28